PETER HOMMERICH *v.* R. A. HUNTER, State Treasurer.—Same *v.* same.

The Treasurer of the State is not vested with the same powers as the Auditor to audit, adjust and settle claims against the State. He cannot refuse to pay a warrant drawn upon him in a legal form by the Auditor, if there are funds in the treasury appropriated by law for the purpose specified in the warrant.

The writ of *mandamus* is the proper remedy to be exercised by the holder of a warrant drawn by the Auditor on the Treasurer, to enforce the performance of the duty imposed by law on the latter officer.

APPEAL from the District Court of the Parish of East Baton Rouge, *Wilson*, J., presiding. *A. M. Dunn* and *A. S. Herron*, for the relator. *J. G. Morgan*, for defendant and appellant.

COLE, J. These consolidated cases represent that plaintiff obtained from *E. W. Robertson*, Auditor of Public Accounts for the State of Louisiana, warrants directing the Treasurer of the State of Louisiana to pay to him certain sums of money out of the funds appropriated for that purpose, being for work actually performed and authorized under the Act of the Legislature No. 143 of the year 1858, " to appropriate five thousand dollars out of the funds belonging to the First Swamp Land District to drain and reclaim lands in the parish of West Feliciana."

It appears that the State Treasurer refused to pay these warrants, on this ground among others, that from his construction of Act No. 143, the money claimed by these warrants was not due plaintiff, whereupon the latter instituted these actions to compel the State Treasurer by *mandamus* to pay the warrants.

Rules were taken upon the Treasurer to show cause why the writ should not be granted, and after trial thereof, were made absolute.

Defendant has appealed.

No objection is made to the form of the warrants given by the Auditor in these cases.

The duties of the Auditor are defined by the Act of 13th March, 1855, to regulate the office of Auditor of Public Accounts. Sess. Acts, 1855, p. 125.

It is his duty, § 5, " to audit, adjust and settle all claims against the State payable out of the treasury, except such claims as may be expressly required by law to be audited and settled by some other officer or person."

" To draw all warrants upon the treasury for money, except only in cases otherwise expressly provided for by law."

By section 8 it is provided, " That all persons having claims against the State shall exhibit the same, with the evidence in support thereof, to the Auditor of Public Accounts, to be audited, settled and allowed, within two years after such claim shall have accrued ; and no claim or debt shall be allowed against the State but such as shall have been exhibited to the Auditor, except only when it shall be proved that the claimant or creditor has vouchers which he could not produce to the Auditor on account of sickness, unavoidable accident, or absence from the State."

By section 10, whenever the Auditor may think it necessary for the proper settlement of any account, he may examine the parties and others on oath, touch-

29

ing any fact material to be known in the settlement of such account, and for that purpose may issue subpœnas or commissions, or compel witnesses to attend before him, and give evidence in such manner, and by such means as are allowed by courts of law.

Section 12 prescribes the form of the warrant to be drawn by the Auditor upon the Treasurer.

Section 15 makes it his duty, at the request of any person interested, who may be dissatisfied with his decision on any claim exhibited to him to be audited, to refer the same, with his reasons, to the General Assembly without delay.

Section 25 provides for the punishment of the Auditor if he should knowingly issue any warrant upon the Treasurer, not authorized by law.

It is clear from these provisions of the law, that the Auditor has the power to determine what claims shall be paid, except such as are required by law to be settled by some other officer or person.

Section 5 of the Act relative to the State Treasurer declares, that it shall be the duty of the Treasurer to disburse the public money upon warrants drawn upon him according to law, and not otherwise. Sess. Acts, 1855, p. 448.

The meaning of this section is, that when the warrant is drawn as provided by law, and signed by the one authorized to do so, that then he is to pay it.

It cannot be interpreted to signify that the Treasurer is vested with the same powers as the Auditor, to audit, adjust and settle all claims against the State. If such had been the intention of the Legislature, they would have specified his duty to be, not only to pay, but also to audit and settle all claims against the State, and for this purpose, to be vested with powers similar to those of the Auditor.

If the Treasurer can refuse to pay a warrant drawn upon him in legal form by the Auditor, then his power is superior to that of the Auditor, and the office of the latter becomes almost unnecessary; for, after the accounts had been audited by the Auditor, the Treasurer could require the claimant to prove again his demand before him, and the creditors of the State would be harrassed by long delays and expenditure of money at the seat of government, before their just demands would be paid.

The object of the law was to create two officers with distinct authority : the one was to audit and settle claims against the State, and to draw warrants for the same upon the Treasurer; and the duty of the latter was to pay the same.

The form of the warrant, as prescribed by the Legislature, manifests the intention of the law. It is as follows :

"STATE OF LOUISIANA, }
No. ———.                                   Auditor's Office. }

I certify that the sum of —— dollars and — cents is due by the State of Louisiana to ——— for ———, and I do hereby direct that the Treasurer of the State of Louisiana pay to the said ———, or order, the sum of ——— dollars and — cents, out of the funds appropriated for that purpose.

———————, Auditor."

The law in this form authorizes the Auditor to *direct* the Treasurer to pay the warrant; the supremacy of the Auditor, as to the power of settling the claim, is thus recognized by the Legislature.

Section 20 of the Act relative to the State Treasurer provides that, " If the Treasurer shall wilfully and illegally refuse to pay any warrant lawfully drawn upon the treasury, having the funds in hand to pay the same, he shall be deemed guilty of a misdemeanor in office, and upon conviction thereof, shall be fined in a sum of not less than five hundred dollars for the use of the State, and shall forfeit and pay to the holder of such warrant fourfold the amount thereof, to be recovered against him and his security on his official bond.

This section provides for the criminal prosecution of the Auditor, and does not exclude the holder of the warrant from his civil remedy to obtain payment of the same.

It is not a valid argument against our construction of the law, that the Auditor might draw warrants unauthorized by law.

Such an argument, if legitimate, would justify the interference of public officers with the peculiar functions appropriate to each, and would produce such collisions in the administration of public affairs, as to materially impede the proper and necessary operations of government.

Besides, the law has not clothed the Auditor with such great powers, without also seeking to protect the treasury ; not, however, by authorizing the Treasurer to again audit and to contravene the opinion of the Auditor, but by providing a punishment for the Auditor, if he violates the law.

Section 25 of the Act relative to the Auditor declares, " That should the Auditor knowingly issue any warrant upon the Treasurer not authorized by law, or should he wilfully neglect or refuse to perform any duty enjoined by law, or be guilty of any oppression or extortion, or receive any fee or reward for the performance of any duty not allowed by law, or should he, by color of his office, knowingly do any act not authorized, or in any other manner than is required by law, or illegally use or misapply any money belonging to the State, he shall be deemed guilty of a misdemeanor in office, and upon conviction, be fined not more than one thousand dollars, and imprisoned not more than five years, and be dismissed from office."

Our opinion is, that when a warrant is drawn, to be paid out of money previously appropriated for the same, the Treasurer cannot refuse to pay it, on the ground, that according to his construction of the law, it is not due, but that he is bound to pay the same, if there are funds in the treasury appropriated for a purpose specified in the warrant.

If upon the face of the warrant, it appears that it is drawn for a consideration for which the law has appropriated funds for its payment, the Treasurer cannot refuse to pay it on the ground that the amount is not really due, or that the Auditor has misconstrued the law.

If, however, it should appear upon the face of the warrant, that it is for a consideration for which the law has made no appropriation, then he must refuse to pay it. This is in accordance with section 13th of the Act relative to the Auditor, which provides :

" That no warrant shall be drawn by the Auditor, nor paid by the Treasurer, unless the money to pay the same has been previously appropriated by law ; nor shall the whole amount drawn for or paid under any one head, ever exceed the amount appropriated by law for that purpose."

The Authority given by this Article to the Treasurer to refuse to pay, is merely when no money has been appropriated to pay the consideration of the warrant.

Section 13 also explains in part the meaning of section 5th of the Act rela-

tive to the duties of the Treasurer, which provides : " That the Treasurer shall disburse the public money upon warrants drawn upon him according to law, and not otherwise."

If, for example, no appropriation had been made for the payment of the consideration of the warrant, then it would not be drawn according to law, and the Treasurer must refuse to pay it ; he must refuse, also, if the amount drawn for or paid under any one head, exceeds the amount appropriated for that purpose, or if the warrant does not, as provided by section 12th of the Act relative to the Auditor, certify for what cause the warrant is due, and out of what funds it is to be paid, for if the warrant did not thus specify these particulars, it would not be drawn according to law.

The Auditor is obliged by section 24th of the Act relative to his duties, to submit at each regular session of the Legislature, and as often as the General Assembly may think proper, all his books, accounts, vouchers, &c., to a joint committee of the Legislature. Besides, he is obliged to give a bond for the faithful performance of his obligations.

This supervision of the Legislature, the bond and the punishment for breach of duties, appear to guard the State sufficiently from wrongful action on the part of the Auditor, particularly when it is considered that the Treasurer is empowered to refuse payment of warrants when, upon their face, they show that they are drawn to pay something for which the Legislature has not provided payment.

As the warrants in these consolidated cases are drawn according to law, and upon their face appear to be so drawn, the Treasurer is obliged to pay the same. It is not necessary for us to decide, in these cases, whether the Auditor had the right to issue the warrants.

We are also of opinion that the writ of *mandamus* was the proper remedy for plaintiff in these cases.

The payment of these warrants was a ministerial duty imposed upon the Treasurer, and if creditors of the State could not resort to this writ, but must depend upon an ordinary action, the greatest injustice might be suffered, all public works might be stopped, and the action of the government arrested.

Articles 829 to 832 of the Code of Practice declare, that the writ of *mandamus* is an order issued in the name of the State, by a tribunal of competent jurisdiction, and addressed to an individual, or corporation, or court of inferior jurisdiction, directing the performance of some certain act, appertaining to their duties ; that the object of this order is to prevent a denial of justice ; and that this order may be issued at the discretion of the Judge, even when a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it.

Judgment upon the rules in these consolidated cases affirmed, with costs.